**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Walter Caldwell, | ) | CASE NO. 1:18 CV 68 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Allstate Property Insurance | ) | **Memorandum of Opinion and Order** |
| Casualty Company, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. 14). Also pending is Defendant Allstate's Motion for Summary Judgment re: Coverage (Doc. 15). This is an insurance coverage dispute. For the reasons that follow, plaintiff's motion is DENIED and defendant's motion is GRANTED in PART and DENIED in PART. Defendant is entitled to summary judgment on the issue of "freezing." Questions of fact exist, however, with respect to the issues of "unoccupied" and "reasonable care." As no party moved for summary judgment on count two, that count also remains pending.

1

**FACTS**

Plaintiff Walter Caldwell insured property located in Cleveland through defendant Allstate Property Insurance Casualty Company. The policy at issue insured the structure, as well as the personal property located therein. It is undisputed that in 2016 problems with two pipes caused damage to the structure and plaintiff's personal property. The facts of the case are largely undisputed.

Plaintiff purchased the Cleveland property in 2005 and "moved in" in 2006. At that time, plaintiff's elderly mother resided in Rocky River. Plaintiff testified that he split time between the two houses. He kept clothing at both houses and maintained a bedroom at his mother's house. Plaintiff kept his musical instruments and important papers at his Cleveland house. After his mother died, plaintiff continued to split time between the two homes. He used both houses as mailing addresses, although his license contains the Rocky River address. Plaintiff testified that the thermostat at the Cleveland property was always set to 65 degrees.

On the other hand, a neighbor to the Cleveland property testified that he did not believe that anyone lived at the house. The neighbor indicated that lights were only very rarely on in the house and there was never any activity that indicated that anyone lived there. In addition, defendant provides testimony from plaintiff's agent, who indicated that plaintiff admitted to the agent that plaintiff did not live at the Cleveland property. Plaintiff further testified that he never took a shower or bath at the Cleveland property.

Plaintiff testified that he was at the Cleveland property on December 10, 2016, and again on January 22, 2017. Plaintiff has no recollection of being there at any point in between. Plaintiff always checked the furnace and thermostat to make sure it was functioning. On January

2

22, 2017, a neighbor of the Cleveland property noticed water flowing inside the house and notified plaintiff via telephone. Due to the length of the water flow, the doors were swollen shut. Plaintiff and his neighbors pried the door open with a pry bar. According to plaintiff, a neighbor turned off the water valve and the furnace.

On January 26, 2017, Donnelly Heating and Cooling came to the Cleveland property to check on the furnace. Thereafter, defendant retained Nick Leone, an engineer, to investigate the cause of the loss. Leone inspected the property on two separate occasions. Leone determined that there were two sources for the water leaks. One source originated from an upstairs bathroom hot water pipe that had separated from its compression connection to the valve. The other source was a cracked elbow to the cold water supply pipe in a downstairs bathroom.

In connection with his investigation, Leone obtained utility bills. The water bills showed essentially zero water usage during all of 2016, until water usage suddenly spiked for a week commencing on December 18, 2016. On December 25, 2016, the water meter registered no usage. On January 22, 2017, however, neighbors discovered free flowing water inside the property even though the water meter was not registering any usage. In addition, Leone reviewed gas bills and historical usage. Leone determined that the natural gas usage for the second half of 2016 was minimal and accounted only for maintenance of the pilot light on the furnace. In other words, the furnace was not used as a heating source in the latter half of 2016. In addition, when Leone inspected the furnace, he noted that the natural gas valve was in the pilot position. Plaintiff, however, testified that he never switched the valve and only inspected the thermostat to make sure it was set at 65 degrees.

Ultimately, defendant denied plaintiff's claim for coverage based on the "frozen pipe"

3

exclusion and this lawsuit followed. Plaintiff filed his three-count complaint in state court and, thereafter, defendant removed this matter. Count one is a claim for breach of contract, count two is a claim for bad faith, and count three seeks a declaratory judgment. Although defendant claims that the Court bifurcated count two, a review of the docket demonstrates that the Court did no such thing. Rather, the Court stayed the appraisal at the request of the parties. The docket entry cited by defendant makes no mention whatsoever of count two.

Defendant moves for summary judgment only with respect to counts one and three. Plaintiff moves for "summary judgment/declaratory relief" with respect to count one. The Court interprets this to mean that plaintiff seeks summary judgment with respect to both count one, *i.e,* the breach of contract claim, as well as count three, *i.e.*, the declaratory judgment claim. Both motions are opposed. As neither party moved with respect to count two, that count remains pending.

## **STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered

undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting summary judgment remain unchanged" and the amendment "will not affect continuing development of the decisional law construing and applying" the standard. See, Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**ANALYSIS**

Defendant argues that it is entitled to summary judgment with respect to the breach of contract and declaratory judgment claims because the loss is not "covered" under the terms of the Policy. Defendant cites the following policy terms:

Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C

A. We do not cover loss to the property described in Coverage A–Dwelling Protection... consisting of or caused by the following:

    1. Freezing of:

        a) plumbing....

    or discharge, leakage or overflow from within a)...above, caused by freezing, while the building structure is vacant, unoccupied or being constructed unless you have used reasonable care to:

        a) maintain heat in the building or structure; or

        b) shut off the water supply and drain the system and appliances.

(Doc. 15-2 at PageID 169).

According to defendant, at the time of the loss, the "building or structure" was

"unoccupied" and plaintiff failed to maintain the heat.  Nor did plaintiff shut off the water supply.

Plaintiff initially argues that the policy is ambiguous.  Plaintiff points to the following policy term:

Permission Granted To You

a) The residence premises may be vacant or unoccupied for any length of time, except where a time frame is indicated in this policy for specific perils.  A building structure under construction is not considered vacant.

According to plaintiff, defendant cannot have it both ways.  On the one hand, the "Permission Granted To You" portion of the policy expressly allows plaintiff to leave the premises unoccupied for "any length of time."  Plaintiff notes that the "freezing" exclusion does not identify a "time frame" and, as such, the parties agreed that the premises could be left unoccupied.  According to plaintiff, it is inconsistent to then essentially prohibit plaintiff from leaving the premises unoccupied.

"The question of whether the language of an agreement is ambiguous is a question of law." *United States v. Donovan*, 348 F.3d 509, 512 (6th Cir. 2003) (*citing Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993)).  Where the terms of a contract are clear and unambiguous, the Court presumes that the parties' intent resides in the words utilized in the agreement. *Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 817-18 (6th Cir. 1999). "[I]f the meaning of the contract is apparent, the terms of the agreement are to be applied, not interpreted." *Id*.  "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered to give effect to the parties' intentions." *Shifrin v.*

7

*Forest City Enterprises, Inc.*, 597 N.E.2d 499, 501 (Ohio 1992). Under Ohio law, common words appearing in the contract "will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Id.* (internal quotation and citation omitted).

Upon review, the Court rejects plaintiff's argument. Here, the policy provisions are not inconsistent. By way of example, the policy contains a coverage provision directed at vandalism, which provides that losses stemming from vandalism will not be covered if the property is vacant for more than 30 days. There are no actions that an insured can take to obtain coverage for vandalism if a property is vacant for more than 30 days. On the other hand, an insured may leave a property unoccupied for any length of time and still obtain coverage resulting from freezing pipes. The policy simply requires the insured to take certain actions, *i.e*, use reasonable care to either maintain heat in the building or structure or shut off the water supply and drain the system and appliances. Provided these precautions are taken, coverage will be afforded during any period that the premises is unoccupied. Thus, the Court does not find that the "Permission Granted To You" provision conflicts or is ambiguous with the "Losses We Do Not Cover" provision. Rather, both provisions allow coverage for an unoccupied premises.

Plaintiff next argues that the personal property coverage is broader than the dwelling coverage. Plaintiff claims that losses to personal property occurred due to the discharge of water, as opposed to freezing. Plaintiff claims that the policy does not exclude loss to personal property resulting from water discharge. Unlike the provision directed at dwelling coverage, which excludes losses due to "freezing of plumbing...*or discharge, leakage, or overflow...caused by freezing*...," the coverage provision directed at personal property contains no such language.

8

Upon review, the Court disagrees. The provision directed at personal property provides:

We will cover sudden and accidental direct physical loss to [personal property], except as limited or excluded in this policy, caused by:

14. Freezing of a plumbing, heating or air conditioning system or a household appliance.

> We do not cover loss at the residence premises...caused by or resulting from freezing while the building structure is vacant, unoccupied or under construction unless you have used reasonable care to:
>
> a) maintain heat in the building or structure; or
>
> b) shut off the water supply and drain the water from the systems and appliances.

(Policy at PageID 165).

The Court does not find the dwelling and personal property provisions to be inconsistent. Nor does the use of slightly different language mean that the parties necessarily agreed to different coverage. Here, although the personal property provision does not expressly exclude loss occurring due to "discharge, leakage, or overflow...caused by freezing," it does expressly exclude coverage for loss to personal property "caused by or *resulting* from freezing." Plaintiff essentially asks that the Court read this provision to limit the exclusion to only the loss to the actual pipe. But this language appears in the personal property section of the policy.[1] As such, plaintiff's interpretation makes no logical sense. Rather, the Court finds that the provision excludes coverage for loss to personal property resulting from or caused by freezing pipes.

---

[1] It would make no sense that the parties intended to exclude only loss to the pipe under the personal property section. Pipes, as well as construction materials and supplies, are covered under "dwelling protection." (Policy at PageID 162). Thus, it would be illogical to exclude from coverage a loss that is not covered in the first place.

9

Damage to personal property "caused by" or "resulting from" freezing pipes includes loss to personal property occurring from water escaping due to freezing pipes. Accordingly, plaintiff's argument is rejected.

With these policy provisions in mind, the Court now turns to defendant's arguments. Defendant argues that plaintiff left the property unoccupied. In addition, defendant claims that the evidence demonstrates that damage to the dwelling and personal property occurred due to freezing pipes. Therefore, in order to qualify for coverage, plaintiff must establish that he used reasonable care to either maintain the heat or shut off the water supply. According to defendant, no reasonable juror could find in plaintiff's favor. In response, plaintiff argues that the property was not "unoccupied," nor does the evidence conclusively demonstrate that the pipes failed as a result of freezing. Plaintiff argues that even if defendant establishes the two elements of the exclusion, plaintiff nonetheless used reasonable care to maintain the heat. Therefore, defendant is not entitled to summary judgment on the issue of coverage.

The parties do not dispute that defendant bears the burden of establishing the applicability of the exclusion. Therefore, to be entitled to summary judgment defendant must establish that: (1) the loss resulted from freezing and (2) the property was "vacant, unoccupied, or under construction" at the time the freezing occurred.

1. "Freezing"

With regard to the first prong, the Court finds that defendant is entitled to summary judgment. Defendant relies on the expert report of Nick Leone in support of its position that the loss at issue resulted from freezing. Leone is a registered professional engineer licensed by the State of Ohio. Defendant employed Leone to investigate the cause of the loss at issue in this

10

case. Leone determined that two "failures" occurred. One occurred in an upstairs bathroom. A compression connection on the hot water supply line located under the sink pulled out from the valve stop. The second occurred in a downstairs bathroom where Leone discovered a crack in the supply line piping at the 90° elbow supplying the cold water to the bathtub. Plaintiff does not appear to dispute that the crack in the supply line is physical evidence that freezing caused this plumbing failure. The failure of the compression connection, however, is not *necessarily* caused by freezing. It is, however, *consistent* with frozen pipes. Leone did testify, however, that the likelihood of two unrelated failures occurring at or near the same time was nearly impossible.

In addition to the aforementioned, Leone reviewed various records, including natural gas records for the property. Those records showed higher gas usage in the early months of 2016. Leone compared the usage from those months to the usage for December. In February of 2016, the "heating degree value" was 1061. This corresponded to 16.9 MCF of natural gas used. December of 2016 saw a similar heating degree value, yet only 3.6 MCF of natural gas was used. According to Leone, this usage is not consistent with continued use of a furnace as a primary heat source.

Leone also reviewed the water records. The records show virtually no water usage at the property in all of 2016 until December 18, 2016, at which point a large spike in water was recorded. The spike continued through December 25, 2016. Thereafter, no water usage was again recorded. Leone avers that the spike on December 18, 2016 is consistent with the occurrence of a "freezing event." Leone also reviewed historical temperature data. The data shows a stretch of below freezing temperatures occurring on December 14, 15, and 16. This

11

freezing stretch was followed by a slight temperature increase on December 17 and December 18, which would allow water to flow from the "frozen failed pipes." In other words, the temperature data is entirely consistent with the water records, which show a spike in water usage on December 18, 2016.

Based on the foregoing, defendant's expert opines that, to a reasonable degree of scientific certainty, freezing is the probable cause of the loss at the property.

Plaintiff offers no evidence in response. Rather, plaintiff argues that he disputes some of the underlying facts on which Leone relies. As such, although plaintiff does not present any evidence of his own, a jury could reject Leone's testimony. Upon review, the Court finds that, as a matter of law, defendant establishes that the loss resulted from freezing. Plaintiff does challenge some of the facts on which Leone relies. But those facts are not necessary to Leone's opinion. By way of example, Leone indicates that his analysis of the natural gas records is buttressed by the fact that when he investigated the loss, he discovered that the furnace was set to "pilot mode." Plaintiff points to his testimony in which he avers that he did not place the furnace in "pilot mode." In addition, other testimony supports the conclusion that the furnace was set to "pilot mode" by individuals entering the house *after* the loss occurred. As defendant points out, however, whether the furnace was set to pilot mode is not the relevant inquiry. Rather, the issue is whether there was heat in the house. Plaintiff does not dispute the natural gas records on which Leone relies to establish that there was insufficient heat in the house in December to operate a furnace. Whether that furnace was set to "run" or "pilot light" does not matter to the issue of whether freezing occurred.

Plaintiff further disputes the water records. According to plaintiff, Leone observed water

12

flowing at the house during his inspection in January of 2017, yet the water meter recorded no usage that day. As such, the water meter is broken and the water records are unreliable. But there is no evidence that plaintiff used an appreciable amount of water in 2016. It is further undisputed that a large amount of water flowed through the pipes at or around that time frame that the water records show a large spike in usage. Thus, there is simply no evidence that the water meter did not work prior to December 25, 2016. And, as defendant points out, Leone relies on the water records to show *when* the freezing occurred, not *if* freezing occurred.

The Court also rejects plaintiff's argument that the jury could accept Leone's testimony that "other causes" exist for the plumbing failure in the upstairs bathroom. Plaintiff points out that Leone testified that a compression connection may pull out from the valve stop for a variety of reasons. But, that argument goes only to the first plumbing failure. Plaintiff makes no such argument with regard to the crack in the supply line piping at the 90° elbow in the downstairs bathroom. Not only does plaintiff appear to concede that freezing caused this failure, but plaintiff ignores Leone's testimony regarding the other failure. Although standing alone, other causes may result in the first failure, Leone explained that he concluded that freezing caused both failures due to the unlikelihood that two separate and unrelated plumbing failures would occur at the same time. Plaintiff offers no evidence in response.[2]

---

[2] Plaintiff further claims that he is entitled to explore with the jury Leone's "inconsistent" opinions. Initially, Leone testified that the plumbing failures are "consistent" with freezing. Plaintiff moved to strike this opinion and the Court allowed the parties to engage in expert discovery. Subsequently, Leone filed a second report and an additional declaration clarifying that, to a reasonable degree of scientific and engineering certainty, the probable cause of the plumbing failures is freezing. The Court does not find these opinions to be inconsistent. Certainly, it does not create a question

13

Accordingly, although plaintiff attempts to "poke holes" in Leone's opinion, plaintiff does not offer sufficient evidence from which a jury could find that freezing was not the cause of the plumbing failures. Plaintiff offers no evidence of his own. At best he questions certain of the facts relied on by the expert. But those facts are not necessary to Leone's opinions.[3] For these reasons, the Court finds that no genuine issue of material fact exists with regard to the cause of the plumbing failures.

2. "Unoccupied"

Defendant also argues that reasonable minds could only conclude that the property was "unoccupied" at the time the freezing occurred.[4] The policy does not contain a definition for "unoccupied." Defendant cites various cases in which courts have defined "occupancy" or "unoccupied" as a matter of law. The Court finds that only cases interpreting Ohio law are relevant as other jurisdictions interpret the terms in varying ways.

One such definition appears in *Moody v. Amazon Ins. Co.*, 38 N.E. 1011 (Ohio 1894), *overruled in part on other grounds, Germania Fire Ins. Co. v. Werner*, 76 Ohio St. 543 (1907):

> To constitute occupancy of a building insured as a 'dwelling house,' it is not essential

---

of fact as to whether freezing caused the plumbing failures.

[3] Plaintiff questions other "facts" too. According to plaintiff, Leone's opinion is dependent on the pilot light for the hot water heater being set to "on," but at the time of the inspection, it was set to "off." But plaintiff offers no evidence that he set it to "off" prior to the loss. Rather, his own evidence indicates that other people were in the house attempting to turn off the gas and water in order to ensure the safety of the property. *See, e.g.*, Doc. 20 at PageID 615 ("Mr. Bey went into the property to try and turn off the water and anything else that could cause a problem.")

[4] Defendant does not argue that the property was vacant or under construction.

14

> that it be put to all the uses ordinarily made of a dwelling, or to some of those uses all of the time, or that the whole of it be employed in that use; nor will the building be considered as unoccupied upon its ceasing to be used as a family residence, where the household goods remain ready for use, and *it continues to be occupied by one or more members of the family, who have access to the entire building for the purpose of caring for it, and who do care for it, and make some use of it as a place of abode.*

(Emphasis added.). *See also, Eureka Fire & Marine Ins. Co. v. Baldwin*, 57 N.E. 57 (1900)(after tenant moved out, house was "unoccupied" even though: owner's son slept at house during the day; a cot, chair, and alarm clock were present at the house; and owner checked on house every day). Another Ohio court interpreted the definition as follows:

> A dwelling house is vacated or unoccupied within the meaning of a condition against vacancy by the permanent removal therefrom of the regular occupants, even though a few articles are left on the premises or occasional or limited use is made of the insured dwelling.

*Manos v. Ohio Fair Plan Und. Ass'n*, 1988 WL 75366 (Ohio Ct. App. July 13, 1988).

On the other hand, plaintiff argues that the definition of "unoccupied" is ambiguous and, as such, the Court must construe the term against the insurer. According to plaintiff, the dictionary definition of "unoccupied" is "without occupants; empty; vacant." Plaintiff claims that "empty," in turn, means "containing nothing; having none of the usual or appropriate contents." Alternatively, plaintiff points out that the dictionary also defines "unoccupied" as "deserted," which, in turn, is defined as "to leave without intending to return." Plaintiff claims that the Court must apply one of these definitions as ambiguous terms must be construed narrowly in favor of the insured. Here, there is evidence that plaintiff maintained belongings at the property. In addition, plaintiff claims that defendant lacks evidence that he left the property without intending to return.

Ohio courts have interpreted the term "unoccupied" as a matter of law. The definition

15

uniformly requires more than occasional or sporadic use of a property. This is consistent with the purpose of the policy, which is to insure a "dwelling," *i.e.*, the structure in which the insured resides. The Court's definition is supported by the policy provision in which the term is found. Although the policy's "Permission Granted to You" provision allows the residence premises to remain unoccupied, damage resulting from frozen pipes of an unoccupied dwelling is covered only if an insured uses reasonable care to maintain heat or shut off the water. It is apparent from a cursory reading that the intent of the provision is to prevent loss to the property from freezing pipes if a *person* is not going to be present to maintain the property. In such a situation, extra care must be taken to prevent loss. Whether solely belongings remain would have no bearing on this issue. Thus, plaintiff's proposed definition simply does not make sense in light of the provision as a whole.

Having defined the provision to require the presence of the insured for "more than occasional or sporadic use," the Court now turns to whether the facts at issue demonstrate that the property was "unoccupied" as a matter of law. Construing the facts in the light most favorable to the plaintiff, the Court finds that a question of fact exists as to whether plaintiff "occupied" the property at the time of loss. Defendant relies on testimony from plaintiff's neighbor, who avers that it never appeared that anyone lived at the property. And, according to defendant, the utility records show little to no water or gas usage for the better part of 2016. On the other hand, plaintiff testified that he "might spend five days in [Rocky River] and five days at the [insured property.] At the very least, at the very least, if I was spending more time in [Rocky River] I would be in my house, at the very least once a week or once every two weeks." This Court is not permitted to judge credibility at the summary judgment stage. Plaintiff also

16

points out that he used the property's address as his mailing address and kept important papers there. While standing alone the presence of belongings may not satisfy the "occupancy" test, coupled with plaintiff's testimony, the Court finds that sufficient evidence exists from which a jury could decide that plaintiff occupied the property.

Plaintiff also argues that, in addition to the policy at issue, defendant insured plaintiff's automobile. The automobile policy listed the house in Rocky River as plaintiff's residence. In addition, defendant issued a homeowner's policy to plaintiff for the Rocky River property. That policy also listed Rocky River as his residence. It appears that plaintiff may be arguing that defendant is estopped from claiming that the property was "unoccupied" because defendant knew that plaintiff at least partially resided in Rocky River. But, the policy at issue *permits* the "residence" to be "unoccupied." Therefore, the fact that defendant may have known of the Rocky River "residence" does not mean that defendant is prohibited from raising the issue of "occupancy."

3. Reasonable care

The Court now turns to whether plaintiff "used reasonable care to maintain the heat." Upon review, the Court finds that defendant is not entitled to summary judgment. As an initial matter, the parties dispute who bears the burden of proof on this issue. According to defendant, this aspect of the provision constitutes an exception to the exclusion. As such, plaintiff bears the burden of proof. Plaintiff claims, however, that the entirety of the provision constitutes the exclusion, for which the insurer bears the burden of proof. The Court need not address this issue. Assuming *arguendo* that plaintiff bears the burden of proof, he satisfies that burden for

purposes of avoiding summary judgment.[5]

Defendant relies on its expert, who analyzes the heating records for the year. A comparison of heating days per month with natural gas usage shows that the furnace could not have been used as a heat source in November or December. In addition, the expert compared usage from the cold weather months of early 2016 (during which time the furnace was used as a heat source) with the usage from November and December of 2016. This comparison shows a dramatic decrease in usage in the late months of 2016 and further confirms that natural gas was not used to heat the property. Plaintiff, however, offers testimony that he always kept the furnace on and set the thermostat to 65 degrees. To his knowledge, the furnace worked. In addition, plaintiff testified that when he was "there during the winter months," the temperature in the house was never under 65 degrees. Notably, defendant wholly fails to address this evidence. Again, as set forth above, the Court is not permitted to make credibility determinations in addressing the parties' summary judgment motions. The Court simply cannot say that plaintiff failed to use reasonable care to maintain the heat as a matter of law. Defendant was at the property on December 10th and testified that the furnace was working, the thermostat was set to 65 degrees, and the house was warm. According to defendant's expert, the pipes froze approximately eight days later. Viewing the evidence in the light most favorable to the plaintiff,

---

[5] Although plaintiff moves for summary judgment, his motion is directed only at coverage. He indicates that "[r]ather than slay windmills, we will allow Allstate to set forth its proof and raise the exclusions it believes apply. We will then address the merits of Allstate's position in our reply brief." Plaintiff, however, did not file a reply brief. Therefore, plaintiff is not entitled to summary judgment on the "reasonable care" issue because plaintiff never made any argument in the context of its motion .

the Court finds that a question of fact exists with regard to "reasonable care."

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED and Defendant Allstate's Motion for Summary Judgment re: Coverage is GRANTED in PART and DENIED in PART. Defendant is entitled to summary judgment with respect to the issue of "freezing." Questions of fact exist, however, with respect to the issues of "unoccupied" and "reasonable care." As no party moved for summary judgment on count two, that count also remains pending.

IT IS SO ORDERED.


    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 10/24/18